Michael COVINGTON, Plaintiff,

v.

Allyn SIELAFF, etc., et al., Defendants.

No. 76 C 425.

United States District Court,
N. D. Illinois, E. D.

April 5, 1977.

Michael Covington pro se.

Jeffrey C. Doane, Chicago, Ill., Illinois Department of Correction, for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

■ Plaintiff brought this *pro se* civil rights action against a group of officials in the Illinois Department of Corrections, alleging that his prison disciplinary hearing deprived him of constitutionally protected rights. Plaintiff, a prisoner at Stateville penitentiary, seeks declaratory relief, injunctive relief, and damages pursuant to 42 U.S.C. § 1983.[1] Jurisdiction is based on 28 U.S.C. §§ 1343, 2201, and 2202. All defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted. Defendants' motion is granted in part and denied in part for the following reasons.

In the late evening of August 4, 1975, defendant King, a prison guard, came to plaintiff's cell and observed plaintiff engaged in homosexual activity with his cellmate. Officer King reported the incident on an Inmate Violation Report, and plaintiff was placed in segregation. On August 5, plaintiff received a copy of the report, which briefly stated that Officer King saw plaintiff having sexual contact with his cellmate. On August 6, 1975, the Adjustment Committee initiated a hearing·on the report. Since plaintiff disputed the charge, the hearing was continued until September 10, 1975. The Committee received a "cover letter" from Officer King describing what he saw in more detail than in the Inmate Violation Report. It is unclear whether Officer King was personally before the Committee on September 10. The Committee interviewed plaintiff and found that he had "nothing to say" about the charge. The Committee found plaintiff guilty. As punishment, plaintiff lost six months statutory good time credits. He was also placed in segregation, time served, and was demot-

---

1. Plaintiff also relies on 42 U.S.C. § 1985(3), but his complaint fails to state a claim under this statute because he does not sufficiently allege class based discrimination. *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976).

ed from "A" to "C" grade. Plaintiff appealed the decision to the Department of Corrections Inquiry Board, and then to the Department of Corrections Review Board, but the initial finding was affirmed in all respects. Then plaintiff filed this civil rights action.

Plaintiff's first contention is that he did not receive adequate notice of the charge against him prior to the disciplinary hearing because the Adjustment Committee refused to disclose some evidence used against him, the "cover letter" written by Officer King.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court defined what procedures are constitutionally required before a prisoner is disciplined for violating prison rules. Although the prisoner must receive advance written notice of the charges against him and an explanation of the evidence forming the basis of the decision, he is not also entitled to discover evidence supporting the charge. The court explained in *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 716 (7th Cir. 1973), that courts should defer to the expertise of state officials and let them specify the extent to which evidence of a disciplinary violation must be disclosed to the prisoner. The purpose of notice is only to give the prisoner an opportunity to prepare his response.

■ In the instant case, plaintiff received adequate written notice of the charge in the Inmate Violation Report. He also received an adequate, though brief explanation of the basis for the finding of guilty. This explanation was amplified in the written report of the Inquiry Board, which described the contents of the cover letter in more detail. The notice was not constitutionally infirm.

■ Next, plaintiff contends that the decision deprived him of due process of law because it was not supported by the evidence. The due process clause of the Fourteenth Amendment not only guarantees that liberty shall not be infringed without appropriate procedural safeguards, but also constitutes a check upon the fairness of an administrative decision, such as decisions of the prison Adjustment Committee in disciplinary cases. Although the procedures may provide adequate notice and an opportunity to be heard, an administrative decision may still be overturned as violative of substantive due process if it is arbitrary and capricious. Historically, the standard of review under the Fourteenth Amendment is narrow and probes the record in less depth than the standard of review of administrative decisions subject to direct review under the "substantial evidence" test. *McDonald v. Board of Trustees of University of Illinois*, 375 F.Supp. 95, 103–05 (N.D.Ill.1974).

■ In *Aikens v. Lash*, 514 F.2d 55 (7th Cir. 1975), the court addressed the appropriate standard for reviewing decisions of prison disciplinary boards. Somewhat inconsistently, the court said that the task of lower courts is

> to determine whether the decision was based on substantial evidence, or whether the decision was sufficiently arbitrary so as to be a denial of due process. Clearly, a decision to order a disciplinary transfer cannot be made arbitrarily or capriciously. *Id.* at 60–61.

As we understand the opinion in *Aikens*, the phrase "substantial evidence" was not intended to alter the standard of review under the due process clause. Instead, the phrase "substantial evidence" is meant to describe the prison officials' burden of proof in a prison administrative hearing:

> It is, of course, hoped that when the evidence is not substantial, they will accordingly find the inmate not guilty of the charges against him. *Id.* at 60.

Moreover, since the court in *Aikens* concluded that procedural due process of law merely required written findings supported by reasons, it must have intended that the standard of review be somewhat less than the traditional substantial evidence test. The reason is that a thorough, probing review is only possible if the record is preserved in detail and consists of more than a written statement of the conclusion and reasons supporting it. We conclude that if the decision finding plaintiff guilty was not

arbitrary and capricious, the decision did not deprive him of substantive due process of law. Because the finding of guilt was based on the eyewitness report of Officer King, and because plaintiff failed to impeach the report at his hearing on September 10, 1975, the finding of guilt was not arbitrary and capricious.

       Finally, plaintiff contends that the sanctions imposed, loss of six months statutory good time and demotion from "A" to "C" grade, was cruel and unusual punishment. In this circuit, it is clear that federal courts have an obligation to decide whether the punishment was proportionate to the offense in both state and federal prison disciplinary hearings. *Chapman v. Kleindienst*, 507 F.2d 1246, 1252 (7th Cir. 1974); *Haines v. Kerner*, 492 F.2d 937, 942 (7th Cir. 1974); *Adams v. Carlson*, 488 F.2d 619, 635–36 (7th Cir. 1973). The court must consider all the facts and circumstances surrounding the decision, such as the disciplinary offense involved, the prisoner's disciplinary record, and the offense for which the prisoner was originally sentenced. *Chapman, supra,* at 1252. In the instant case, the complaint and exhibits are devoid of any facts concerning plaintiff's disciplinary record and the nature of his original offense. Moreover, defendants have failed to supply any information concerning their policies and standards, if any, for arriving at an appropriate punishment for infractions of prison rules. Thus, dismissal of plaintiff's claim that his punishment was cruel and unusual is premature. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Since *Chapman* and *Adams* both involved long periods of punitive segregation, it could be argued that the punishment must be reviewed under the Eighth Amendment only when this severe punishment is imposed.[2] The court in *Adams* was troubled by the harshness of punitive segregation and quoted a report cautioning against indiscriminate use of this measure:

> Punitive segregation . . . is a major disciplinary measure, which can

have damaging effect upon some inmates, and should be used judiciously when other forms of action prove inadequate or where the safety of others or the serious nature of the offense makes it necessary.

> Manual of Correctional Standards of the American Correctional Association (1959), quoted at 488 F.2d at 628 n.15.

Nevertheless, in holding that disproportionate punishment can be cruel and unusual, the court spoke in general terms and did not state that proportionality of punishment should be reviewed only when lengthy punitive segregation is ordered. *Chapman* and *Adams* cannot be distinguished away on the grounds that punitive segregation is a more severe sanction than loss of good time, which affects the length and not merely the conditions of confinement.

       Although plaintiff's Eighth Amendment claim may not be dismissed, we do not believe that the Court of Appeals expects district courts to substitute their judgment for that of prison officials, or to require a trial *de novo* on the propriety of the sanction imposed when prisoners are found guilty of prison rule violations. In the absence of precise guidelines for making this determination, we believe that prison officials are best equipped to decide what sanctions are appropriate for various offenses, and to decide, in the context of volatile prison conditions, how much and what kind of punishment is necessary to preserve order. But the record must contain some facts showing that the sanction is appropriate for the offense.

       Finally, plaintiff has improperly sought an injunction requiring defendants to restore his lost good time credits. Since this request affects the length of confinement, it is only available in a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). And in a habeas action, petitioner must exhaust the available state court remedies before petitioning for relief

---

**2.** In *Haines, supra,* the punishment was short, 15 days in solitary confinement, and the court rejected plaintiff's claim that it was cruel and unusual as a matter of law.

in federal court. 28 U.S.C. § 2254(b). Treating plaintiff's § 1983 complaint as a petition for a writ of habeas corpus, there are no allegations that petitioner has exhausted any possible remedies under the Illinois Post-Conviction Act, *Ill.Rev.Stat.* ch. 38, § 122–1, or the Illinois Habeas Corpus Act, *Ill.Rev.Stat.* ch. 65, § 22. It may be that these remedies are ineffective and exhaustion is unnecessary. *United States ex rel. Williams v. Brantley*, 502 F.2d 1383 (7th Cir. 1974). Because the question of exhaustion was not mentioned by either party, we reserve it until and unless defendants fail to show, on a motion for summary judgment, that plaintiff's punishment was not so disproportionate as to constitute cruel and unusual punishment.

Defendants' motion to dismiss is granted on the question of whether the hearing violated plaintiff's right to procedural and substantive due process of law. Defendants' motion to dismiss is denied on the question of whether the punishment imposed was cruel and unusual punishment. Consistent with the criteria discussed above, defendants are ordered to supplement the record with affidavits showing that plaintiff's punishment was not disproportionate and to present an appropriate motion for summary judgment within 45 days.